(25 Misc. Rep. 28.)

## OESTERLING v. MANHATTAN RY. CO. et al.

(Supreme Court, Special Term, New York County. October, 1898.)

EMINENT DOMAIN—DAMAGES.

     In an action for damages by the construction of an elevated railroad, each party produced an expert witness as to the past and the present values of the property in question. Their testimony was irreconcilable. Defendant's expert testified that the property had increased in value about 25 per cent. since 1873, while property in the immediate vicinity had appreciated from 60 to 70 per cent. There was some evidence, more or less satisfactory, tending to show reasons for the increase of the other property. *Held*, that 40 per cent. increase in valuation since 1873 would be a moderate estimate of the increase which would have taken place without the deterrent influence of the railroad.

Action by Henry Oesterling against the Manhattan Railway Company and others for damages to his fee and its rental value by the construction of an elevated railroad. Judgment for plaintiff.

Atwater & Cruikshank, for plaintiff.

Charles A. Gardiner, for defendants.

SCOTT, J. The parties to this action, following the usual custom, have each produced an expert witness to testify as to the past and present values of the property in suit, and as to the course of fee and rental values for a long period of years on Sixth avenue and on neighboring streets and avenues. Each of these experts testifies that he has been in the real-estate business for upwards of 25 years, having had large dealings in, and giving especial attention to, that part of the city in which the property in suit is situated. They both impressed the court as men of intelligence, and each testified with great positiveness and apparent sincerity. It would seem that a long course of dealing with real estate in a particular locality, by an observant and intelligent man, ought to result, not only in a knowledge of the actual history of the rise and fall of values in that locality, but ought also to qualify the witness to form and express a reasonably close judgment as to the past and present values of a particular lot or a particular class of property within the locality. And when two men testify, both apparently equally intelligent and equally experienced, it would not be unreasonable to expect that they would not differ very widely, either as to past fluctuations in value or as to the present value of the particular piece of property concerning which they are called upon to testify. The two experts who testified in this case did, however, differ so widely and irreconcilably, both as to the course of value of property, generally, in the neighborhood, and as to the past and present values of the property in suit, that the court is driven irresistibly to adopt one of two conclusions. Either one or both of these experts has, notwithstanding long experience, failed to learn the history of the fluctuation of values in the past, and has failed to acquire the capacity to form a just estimate of the past and present values of a particular piece of property; or one or both of these experts has, consciously or unconsciously, testified as an advocate, although sworn as a witness. The defendants'

counsel insists that his witness is at least as well qualified and as reliable as the witness called by the plaintiff, and hence argues, in view of the wide divergence of opinion, that the expert testimony must be held to balance itself, and that the plaintiff has failed to sustain the burden of proof, and to establish affirmatively that he has suffered any damage from the construction and operation of the defendants' railway.   A careful examination of the testimony of the defendants' expert, leaving out of view entirely the testimony of the plaintiff's expert, has satisfied me that the plaintiff has suffered substantial damage, which is capable of estimation with reasonable certainty.   The property in suit consists of a lot and building on the easterly side of Sixth avenue, 20 feet south of Forty-Ninth street.   The building is not new, but has been kept in good repair, and has been to some extent improved.   The rents derived from it decreased considerably after the building of the railway, and afterwards increased to some extent, but never returned to the highest figure realized before the road was constructed.   The defendants' expert testified that Sixth avenue property in this locality depreciated 40 per cent. in value between 1873 and 1880, and after 1880 appreciated something more than 100 per cent. on the lowest value reached. He estimates the value of the property in suit at $27,000 in 1873 and at $33,000 in 1898, being an increase in value of a little less than 25 per cent.   It is conceded that the increase in values on Sixth avenue have not kept pace with the increase on Seventh avenue and on the side streets in the vicinity, and certain reasons, more or less satisfactory, are suggested why this difference in increase should not be attributed to the existence of the elevated railway on Sixth avenue.   I agree that for special reasons the course of values on the side streets between Fifth and Sixth avenues would not be a satisfactory test of the increase that probably would have taken place on Sixth avenue if the elevated railway had never been built.   But these special reasons do not apply with the same force, if at all, to property on Seventh avenue above the junction with Broadway, or to property on the side streets between Sixth and Seventh avenues.   The defendants' expert testified that property on Seventh avenue, from Forty-Third to Fiftieth street, has appreciated in value from 60 to 70 per cent. since 1873.   His testimony as to the increase of values on the side streets between Sixth and Seventh avenues was somewhat vague and indefinite, except that in a single street, to wit, Forty-Fifth street, lots had increased in value from $12,000 to $13,000 in 1873 to $20,000 to $22,000 at the present time, an increase of about 70 per cent.   It may be that the special reasons insisted on by defendant have had some influence in appreciating property on Seventh avenue and on the side streets west of Sixth avenue, but I am not convinced that these special reasons account satisfactorily for the great discrepancy between these advances in value and the much smaller advance shown to have taken place in Sixth avenue property.   Taking everything into consideration, it would seem that 40 per cent. is a moderate and conservative estimate of the advance that would have taken place in values since 1873 in Sixth avenue, if it, like Seventh avenue and the side streets, had not been subjected to the deterrent influence of the

elevated railway. Taking defendants' valuation of the property in suit at $27,000 in 1873, if it had increased in value 40 per cent., it should now be worth, irrespective of depreciation of the building, $37,800. The building has undoubtedly depreciated in value to some extent. The defendants fix the amount of such depreciation at $1,500. Deducting this sum from $37,800 leaves the present value of the property, as it should be according to defendants' testimony, $36,300. But defendants' expert fixes its present value at $33,000, which, judging from the rent realized, is certainly none too low. I therefore find the fee damage to be $3,300, and the rental damage $2,772.

Judgment ordered accordingly.